Thank you. Please, the Court. I'm Steve Fink. I'm here for BNSF Railway along with my colleague Brian Neal. Is there an exception to diversity jurisdiction for judicial review, on-the-record judicial review, of state administrative agency orders? Back in 1997, a panel of this Court, two of the members of which are here today, said there was such an exception. The decision in Shamrock Motors did not turn on the text or the structure or the history of the diversity statute itself but relied on an understanding shared by almost all courts of appeals that two Supreme Court decisions, early Supreme Court decisions, the Stude and Horton decisions, had created a non-textual, pragmatic, practical exception to diversity jurisdiction in cases where the review of state administrative agency action was deferential or on-the-record. Later, in that same year, in 1997, the United States Supreme Court took up the interpretation of Stude and Horton and, I'm sure much to the surprise of many courts of appeal judges, held that not only did they not stand for the proposition that the Federal judicial power did not extend to such review, but held they held they stood for just the opposite proposition, that Federal judicial power does extend generally to such review. You might have said brilliant court of appeals judges, but that's what I meant. Absolutely brilliant court of appeals judges. Well, as I say, Judge Fernandez, you were and the panel were in good company. Most courts of appeal had reached the same result, and the Supreme Court looked at the language and said that the courts of appeal had been misreading its import, and that, in fact, That may be, and I I'm difficult to understand. When the Supreme Court says, we are not deciding that question. Now, let's assume, hypothetically, they've kicked out every prop from under the decision. There's nothing left where no foundations are to stand on. But they say, we are not deciding that question. That's what they said. True. And a panel then overturned an earlier panel where the court has been quite explicit that it's not deciding the question. See, that was the lifeline I was going to throw to the original panel. Fair enough. And, yeah, I mean, the answer is, I think, yes. In Miller v. Gammie, the in-bank court said that the rationale of both a reasoning, so to speak, of a Supreme Court decision and the reasoning of a court of appeals decision can be analyzed separately. And our position here is that the only thing that the City of Chicago, although it's very important, all that City of Chicago said was there is no non-textual, there is no pragmatic exception to the diversity jurisdiction, leaving open, really as a matter of first impression for this panel, the question whether there is such an exception to the diversity jurisdiction. Well, the question I have is, to what extent are we talking about the definition of, quote, civil action, unquote? Now, the Chicago case, the Supreme Court did not deal with civil action, but we did. Help us sort that out. Well, of course, civil action and original jurisdiction are both terms that are in 1332. They're not in 1367C, so they're at least plausible candidates for a textual limitation that the court did not find in 1367C. But the reality of the term civil action is that everyone agrees that it is the broadest possible term. It encompasses every type of proceeding that may be brought in a district court. It includes review of arbitral decisions. It includes review of decisions of benefit plan administrators. It includes decisions of federal agency officials. And the question is, if it includes all of those things, why does it not include review of state administrative agency decisions? And that's the question we're putting here. And we've cited in our briefs not just the language of 1331 and 1332, which, as you know, in the Verizon, Maryland case, the Supreme Court said that that very same language that appears in 1331 allowed deferential judicial review of state administrative agency actions in federal question cases. Then they came along in the Alipata Services case and said it makes no sense whatsoever to construe original jurisdiction over civil action in 1331 to mean something different than that very same phrase in Section 1332. So our submission is, is that the Supreme Court has, in fact, essentially answered this question, and that is combining the City of Chicago, the Verizon, Maryland holding, and then the Alipata Services holding means that just like the analysis they did in the City of Chicago, there's simply no language in the diversity statute that prevents a court from having jurisdiction over this sort of claim. And, in fact, you know, I think as a practical matter, many district judges, many court of appeals judges, including obviously some Supreme Court justices, simply found it unseemly. I think you used the word jarring, Judge Fernandez, in the Shamrock opinion that federal district judges would be conducting this kind of review. And so it was, Judge O'Connor, you refer to it as a Congress couldn't have meant that rationale and disapproved it, that despite the language, the broad language, that clearly encompasses this sort of review, the notion was, gosh, this just doesn't seem right, and therefore there must be an exception. And I think that is precisely the reasoning. Justice O'Connor went on in her opinion to address the policy issue in the extension context. She said there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied. Why isn't assuming that the panel were to conclude, I don't know whether we will or not, but that you're correct that under Miller v. GAMI we would have to depart from Shamrock. Why isn't this a case then one in which a Buford abstention would be appropriate? Well, first of all, Your Honor, abstention was not argued in this case. I understand. But in other words, if we send it back, we'd be remanding to the district court. Why wouldn't, in light of, particularly since we're relying on Chicago, why wouldn't that be a proper subject for the district court to consider? Well, we would submit that none of the recognized abstention doctrines, including Burford, could apply here. One, on the technical ground, the Supreme Court has strongly indicated that the abstention doctrines only apply to equitable, you know, cases where the relief is equitable, and we're not asking for any equitable relief here. And second, the Burford doctrine is there are various, as you know, very technical requirements of the Burford doctrine. This Court has said over and over, following the Supreme Court, that it is to be rarely invoked, hardly ever applies. And one of those exceptions or one of those rules, and this Court applied it in the Tucson, City of Tucson against U.S. West Communications case we cited in our brief, is that the administrative process in question has to be essentially a hybrid process. It has to have an agency and an appeal to a specified court that only goes to that court. As in Burford, in Texas, there's a process by which railroad commission orders only went to one court, and the court and the agency acted in sort of a hybrid way. And that's the fact situation that the court had in Burford. But you're talking about what is. You're not talking about what ought to be. Pardon me? You're only talking about what is. I believe it was Justice Ginsburg who said, well, it looks like we're maybe going to get a new abstention doctrine called City of Chicago abstention. Did she say something like that? She suggested the possibility of a City of Chicago abstention. But, of course, later on, Justice Ginsburg was the one who, in Marshall and Ankenbrandt and other cases, have said these non-textual exceptions, the probate exceptions, domestic relations exceptions, are all based on misty and largely incorrect understandings of English chancery law. So I'm not sure Justice Ginsburg would still take that position. But it's a fair point, and I want to answer that question. Why should you? Why shouldn't the court abstain? Well, first of all, just as a purely practical matter, the answer is the same one. The answer that the majority in the City of Chicago gave, which is if Congress agrees with enough federal judges that this is an unwise thing, Congress can come along and create an exception to the diversity jurisdiction. And that was the principal response made in the City of Chicago itself. The second point I would make is, and we make this point in our brief, you know, the order in this case is not anything like your typical decision of a local board or agency or administrative. This, for all intents and purposes, is simply a judgment. It looks like a judgment. It awards damages. It awards other relief. It is simply the adjudication in an agency that in almost every other state in the country occurs in a district court. So even if the court were to recognize, agree with our holding here, the holding would be very limited, because we're not saying that there may not be cases in which abstention would be appropriate. Clearly, there are going to be. There are going to be cases where each kind of abstention may be appropriate, but this isn't one of them. And a third point to respond to. Is there – I realize it wasn't argued in any of the briefs, but is there a notion of primary jurisdiction here, the idea that somehow or other the state agency ought to have first shot at policing its own administrative orders? Well, I mean, of course, the agency does. I mean, there's an initial hearing and then the agency issues a final order, but under Montana law, that order then goes to a district court for review. That's the process. State district court. State district court. And the question is whether under the diversity jurisdiction, I mean, that's what Federal district courts do all the time. They hear State law claims that otherwise State courts would be hearing. And the question is, is there an exception for this one? And, you know, Justice Ginsburg was very concerned that there was going to be a tsunami of these claims. Local review agencies, Federal courts swamped in the 12 years since that case was decided. This case and the Bildbrook case, which an earlier panel of this Court heard and indicated indicative very strongly that they agreed with our position, are the only cases, only two cases we've been able to find where this argument has been made. And there are a smattering, a smattering of decisions where the city of Chicago rationale in the supplemental jurisdiction context itself have come up in the cases at all. So I think the reality is that this sort of review is, it's being raised in this case because, frankly, the railroad faces a very specific problem. You know, the United States Supreme Court described, you know, railroads as easy prey, you know, nonresident, nonvoting targets who can't easily pick up and move. And so the reason we're here, we've made the argument in Bildbrook, and the reason we've made the argument in this case is because of the very policies that underlie the diversity jurisdiction. And we're not alleging, you know, some conspiracy or conscious favoritism or feeling against the railroad in Montana, but that's the purpose of the diversity jurisdiction. And the process that is set up now allows State residents to sue out-of-State employers just like BNSF and completely avoid the diversity jurisdiction, because this Court has held that that agency, when it's doing that adjudication, which looks, acts, and all intents is just like would be going on in a district court, they're not a court. They're not a court within the meaning of the removal statute, and, therefore, these proceedings cannot be removed from the agency either. So that leaves employers, at least, you know, big employers who really can't do anything about it in Montana, completely shorn of the diversity jurisdiction that the Constitution grants. Now, admittedly, Congress has to substantiate by passing the statute, but they have. You know, we are completely deprived of the ability to get a Federal form for what, in all other respects, is simply a employment discrimination claim that this Court hears all the time, Federal district courts hear all the time, and yet we can't get the diversity jurisdiction. So, yes, we're asking the Court to recognize that the City of Chicago overruled without saying anything more, that at least in these circumstances, and, again, looking at the text of the diversity jurisdiction statute, that there is no exception that would prevent Federal district court from acting as they do in every other diversity case, just as a State court and conduct judicial review. And I'll say one more thing. If you talk to district judges today now, the idea that they don't review records, I think most district judges would tell you that they spend 90 percent of their time, way too much of their time, doing nothing but exactly what this is, that is, reviewing records, whether it's summary judgment records, whether it's administrative agency records, Social Security records. So if the notion is that somehow Federal district courts, you know, they ought to be up there on the bench conducting jury trials, and this just isn't suited for what they do, we reject that notion as well. Thank you. Thank you, Counsel. Your time has expired. We'll hear now from counsel for the appellee. Mr. Treweiler, is that right? Treweiler, Your Honor. May it please the Court, my name is Terry Treweiler. I'm the attorney for the appellee, Matt O'Day, who was the charging party before the Montana Department of Labor, a state agency of the state of Montana. I'd like to, instead of starting from the beginning procedurally, because it sounds like the Court is well familiar with this case procedurally, I'd like to, in reverse order, respond to some of the points that have been made by the railroad. First of all, the policies that underline diversity of jurisdiction, that is, fairness to out-of-state parties, do not apply in this case. Why? The facts in this case have already been decided. There will be no new factual determination of those facts which underlie liability. The law that applies to this case is uniquely Montana law. This was decided under the Montana Human Rights Act, not the Americans with Disabilities Act. And only the Montana Supreme Court can decide Montana law under the Erie Doctrine. You say the facts have been decided, but no final judgment. No judgment is immune from some sort of review, either in state court or federal court. So I don't understand your argument. Well, because the standard of review of an agency decision under the Montana Administrative Procedure Act is simply whether there is sufficient evidence to support the findings of fact.  I'm sorry? Close the record. Suppose the federal district court says there isn't. It doesn't support it. This guy just isn't entitled to it. Then that would be a basis for overturning the administrative agency decision. But that's not normally the principle on which diversity of jurisdiction is based. That's my point. Well, diversity of jurisdiction is just diversity of citizenship. I mean, there are – I guess I'm having trouble with your argument. Well, my understanding of counsel's argument is that diversity of jurisdiction has been imposed as a matter of law through the Constitution and the statutes of the United States to give out-of-state parties a fair forum in which to have their disputes resolved. What I'm saying is that this dispute has already been resolved. The only issues that remain – Wait a minute. How can you say it's been resolved if it's being challenged? It can't possibly be resolved. Well, for two reasons. Number one, there were two cases here. One was the petition to remove into federal district court, which was remanded and which has not been appealed and which has now been decided by the state district court in Montana and has been fully briefed before the Montana Supreme Court. None of the issues that were raised in this direct complaint, which is before this court, have been raised in the Montana Supreme Court, and therefore there is a final judgment as pertains to those issues, and this case is moot. Incidentally, counsel, you said that only the Montana Supreme Court can decide Montana law, and I think that's not correct. Well, the – That's like saying only the U.S. Supreme Court can decide federal law. I'm saying that substantive law of a state is within the province of the state court under Erie v. Tompkins Railway. Of course. But it is perfectly clear that we can decide questions of state law. You can apply Montana law. At least to being overturned by the Montana Supreme Court. Of course. This court is perfectly capable of applying Montana law and often does so, but when there is not a clear decision in that area, this court commonly certifies that issue to the Montana Supreme Court for the reason that only the Montana Supreme Court can resolve substantive issues of Montana law. And why are you saying this case is moot? Because the merits of the case have already been affirmed in state district court in Montana pursuant to the case which was remanded to state district court and not appealed. All right. So there's no relief that we can give in this case? I don't think so. I think that's a binding final judgment. But if we were to conclude that Shamrock has to be overruled and would therefore reverse the district court and send it back, then what would happen at that point? Well, there would be two inconsistent rulings because of the manner in which the railroad chose to proceed. The railroad commenced two proceedings, one in state district court, which it then removed to federal district court, and a separate direct appeal from the state agency to federal district court. But that's not surprising. They were the plaintiffs, right? Well, it depends on which case. The defendant, only the defendant can remove, at least under traditional federal procedural rules. Exactly. They're the plaintiff in this case. So that case is certainly moot. That case is moot, but it involves the same issues that are involved in this case and would collaterally stop the railroad from re-deciding them. Now, I have your red brief in front of me. I can't find where you have argued that this case is moot. You have four issues located, identified. Where do you argue that this case is moot? I don't argue it because the case was decided subsequent to the time that our brief was filed. I do note that this Court ---- But you didn't take the opportunity to file a 28-J letter or something to tell us? I believe we did in a companion case that's now ---- I'm sorry? I believe we did in a companion case that's now pending before the Ninth Circuit, but I don't think we did in this case. You said the Supreme Court of Montana has already decided the case? I'm saying that this case has been fully briefed to the Montana Supreme Court, and none of the issues raised in this petition or direct complaint have been argued by the BNSF to the Montana Supreme Court, and therefore I believe the district court judgment in Montana is final as pertains to those issues. I do think that this Court can take judicial notice of the related pending state court action pursuant to its decision in Burbank-Glendale-Pasadena Airport v. City of Burbank, which is 136 F. 3rd, 1360 at 1364. Let's say you don't get us to just flip it off and say, oh, well, it's moved to the end. Suppose you can't get there. So here we are facing Shamrock. And let's say the Supreme Court has ---- hasn't overturned Shamrock directly, but has taken out, pretty well taken out most of the building blocks that Shamrock rested on. What would you put back into place? Well, I think Shamrock clearly is the law. Shamrock, number one, wasn't based on the stewed decision as argued by the railroad. It was based on this Court's own rationale and a survey of what other federal or U.S. courts of appeal had done regarding the issue of civil jurisdiction. Yes. Assuming that all the bases relied on Shamrock having free will was now in my Supreme Court, what would you put back into place to make Shamrock stand? Again, assuming we don't just say we can't do anything, we're a panel. Well, if you assume the U.S. Supreme Court undermined all the principles on which Shamrock was based, then the railroad is correct. But it didn't. Why? For all the reasons stated in Justice O'Connor's opinion in response to Justice Ginsburg's dissent. She said, first of all, this is like two ships passing in the night. We are not deciding whether there is original jurisdiction under Section 1332. We are only deciding whether there is pendant or ancillary jurisdiction under 1367. And she said, the cases that these government courts of appeal judges keep relying on didn't say that, did not say that it had anything to do with whether it was a de novo review or a more trial, an appellate-type review. It didn't say that. Secondly, if they did say that, district courts can do appellate-type review just fine. So to the extent they thought that appellate-type review is not neat, it's perfectly neat. There's nothing to keep district judges from doing that. It's fine. Okay? So it's undone those two. It's undone the court of appeals cases, the basis of the court of appeals cases. What do you want to put back into place? Two things. First of all, they may have questioned some courts of appeals analysis of the Stude and the Horton decisions. But this court's decision in Shamrock wasn't based on Stude. This court's decision in Shamrock was based on a survey of other circuit court decisions and its own rationale for why federal district courts are courts of original jurisdiction and cross-jurisdictional appeals from a state administrative agency are not matters of original jurisdiction. That's completely independent of this court's interpretation of what was said in Stude. Second of all, this court did not interpret or quote or apply that portion of Stude or Horton which the Supreme Court clarified in City of Chicago. What it did quote on page 198 of its Shamrock opinion was that portion of the Stude opinion, which held under identical factual and procedural circumstances that there was no jurisdiction for a direct complaint like the one at issue in this appeal in federal district court because Iowa statutory law only applied for judicial review in state district court and there was no federal statute or rule of procedure which would provide for a direct cross-jurisdictional appeal into federal court. So is the case that we have now, not the removed case, but the original case filed which is now under appeal here, is this a civil action or not? I don't believe it is under this court's decision in Shamrock. This court held that there's a difference in an appeal and a direct original action for purposes of defining a civil action in a court of original jurisdiction, which is what federal district courts are. Now there are statutorily created civil actions where on the record reviews are conducted in federal district court, but those are created by Congress. Well then what happened in Chicago? What happened in Chicago is what the Supreme Court said in response to Justice Ginsburg. They weren't deciding whether there was original jurisdiction over cross-jurisdictional appeals from state agencies. What they were deciding was ancillary jurisdiction, which assumes there is no original jurisdiction. But the court said. Wait a minute. Isn't that a stretch? I read the same passage, the same material to say that they already had jurisdiction in 1331 or 1332. No? They said they had jurisdiction under Section 1331 because there was a question involved. Federal question. Federal question. Federal question involved. I'm sorry. They then said under Section 1367, we'll now analyze whether we have ancillary or supplemental jurisdiction of an on-the-record appeal. But on page 167 of the U.S. Supreme Court report opinion, they went on to say that by getting to that point, the whole point of supplemental jurisdiction is to allow the federal courts to exercise jurisdiction over claims over which it would not otherwise have jurisdiction. So by inference, they were saying that their whole analysis involved an issue over which they would not otherwise have jurisdiction, which is an on-the-record review of a state administrative agency decision. That's my interpretation. I think that the most direct route, though, to resolve this case is that part of the never been repudiated, never been reversed, never been distinguished, never been modified, and which held that a complaint exactly like this complaint should be dismissed in federal district court because the federal district court has no jurisdiction over it. And the similarity of the facts and the procedural posture of the Stude case are strikingly similar to those in this case. In Stude, the railroad sought to condemn Stude's land. A state commission determined the land's value. Iowa law provided for appeal to state district court. The appeal was de novo, unlike in this case. The railroad filed two proceedings, one in state district court for review and a direct complaint in federal district court for an appeal. The Supreme Court said that the petition for review, which had been removed to federal district court, was properly remanded because the railroad was not a defendant, but it also affirmed the district court's dismissal of the complaint filed directly in district court. And that's the part of the Stude opinion which was quoted in the Shamrock case by this enlightening because it absolutely controls the outcome in this case. The court said the railroad could not perfect that appeal to any court but the court which the statute of Iowa directed, which was the district court of that state for the county of Pottawatomie. The United States District Court for the Southern District of Iowa does not sit to review an appeal, action taken administratively or judicially in a state court proceeding. A state legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction. The Iowa Code does not purport to authorize such an appeal. Congress has provided none by statute, and the federal rules of civil procedure make no such provision. Now, that's a case in which they're actually interpreting Section 1332, the diversity statute, and they say there is no federally created jurisdiction for a direct appeal from a state administrative agency to a federal district court. And that is the exact argument we made in Part 4 of our brief in this case. So based on that, the railroad's response to that is that a state court cannot deny a federal court jurisdiction, but the state court hasn't done so. The state court can't create federal jurisdiction. It's the federal courts and the failure of the legislature to act which deny the railroad jurisdiction in federal district court under the circumstances in this case. I think, in conclusion, what the railroad, and I know that courts don't like floodgate arguments. They're very rarely appropriate. But this really would change the entire complexion of state and federal court relations. It would be a monumental shift of responsibility from the state court system to the federal court system. And it shouldn't be done on an overstated dissent, which is specifically repudiated by the majority opinion. It should only be done by federal legislative action or a clear and unequivocal decision of the Montanans. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Fernandez, Fisher